Copies Mailed/Faxed  12/23/20
Chambers of Vincent L. Briccetti

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DARRELL GUNN,
                          Plaintiff,

v.

CORRECTION OFFICER PATRICK LEON
MCNEIL, CORRECTION OFFICER
PETERSON, CORRECTION OFFICER KEITH
SPOSATO, CORRECTION OFFICER
WESLEY, and CORRECTION OFFICER
ANTHONY WELLS,
                          Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

19 CV 11821 (VB)

12/23/20

Briccetti, J.:

　　　Plaintiff Darrell Gunn, proceeding pro se and in forma pauperis, brings this action

pursuant to 42 U.S.C. § 1983 against defendants Correction Officer ("C.O.") Patrick Leon

McNeil, C.O. Peterson, C.O. Keith Sposato, C.O. Wesley, C.O. Anthony Wells, and the New

York State Department of Corrections and Community Supervision ("DOCCS").[1]  Liberally

construed, plaintiff alleges violations of his First, Fifth, Eighth, and Fourteenth Amendments.

　　　Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6).

(Doc. #26).

　　　For the reasons set forth below, the motion is GRANTED.  However, plaintiff is granted

leave to file a second amended complaint, as specified below.

　　　The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]　　　By letter dated March 9, 2020, pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir.
1997), the New York State Attorney General ("AG") identified defendant "John Doe" as C.O.
Anthony Wells.  (Doc. #11).  In addition, although plaintiff does not list DOCCS as a defendant
in the caption of the complaint, plaintiff states that DOCCS is a defendant within the complaint.
(Doc. #2 ("Compl.") ¶ 10).

1

# BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the operative complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.[2]

During the complained-of events, plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven") in Stormville, New York.

Plaintiff alleges that on April 17, 2015, July 21, 2015, May 24, 2016, August 16, 2016, October 5, 2016, October 17, 2016, April 26, 2017, and July 13, 2017, he filed grievances in which he "presented the facts relating to this complaint." (Compl. ¶¶ 27–34). He further alleges each grievance was denied and that he appealed each denial.

Plaintiff claims that in May 2016, and prior to then, he was denied writing paper, an envelope, and a pen.

According to plaintiff, on August 29, 2016, as plaintiff was working to file an appeal in the New York State Court of Claims ("Court of Claims"), C.O. McNeil told plaintiff he could not give him extended law library access because the Court of Claims "is not considered a court deadline." (Compl. ¶ 42).

---

[2]     On December 20, 2019, plaintiff filed his original complaint. (Doc. #2). On March 30, 2020, plaintiff filed an amended complaint. (Doc. #19 ("Am. Compl.")). Given plaintiff's pro se status, the Court liberally construed both documents together as the operative complaint and directed defendants to respond to both as if they were a single operative complaint. (Doc. #20 at ECF 2). In addition, because plaintiff is proceeding pro se, the Court considers allegations made for the first time in his opposition to the motion to dismiss and the exhibits annexed thereto. See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).

Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

"ECF __ " refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Plaintiff further alleges that on September 29, 2016, C.O. McNeil removed plaintiff from the evening library "call-out"[3] after "falsely accus[ing]" plaintiff of an unexcused absence from the law library on September 22, 2016. (Compl. ¶ 44). According to plaintiff, on September 22, he had been at a different correctional facility for medical reasons.

Moreover, plaintiff claims C.O. Wesley "targeted" plaintiff and gave him "a very hard time" by denying plaintiff access to the law library on March 23, 2017. (Compl. ¶ 46). Plaintiff claims that on the same day, C.O. Wesley withheld plaintiff's pain medication for "pre-existing medical conditions" that C.O. Wesley was "well aware of," causing plaintiff to suffer a panic attack. (Doc. #30 ("Pl. Mem.") at ECF 5).

In addition, plaintiff alleges that on June 1, 2017, C.O. Wells denied plaintiff access to the law library, causing plaintiff to "miss court deadlines." (Am. Compl. at ECF 6).

Plaintiff also alleges that on an unspecified date, C.O. Sposato retaliated against plaintiff for filing the April 17, 2015, grievance. According to plaintiff, C.O. Sposato removed plaintiff from the law library, ordered plaintiff to show him plaintiff's court documents, and upon reviewing them, stated the documents did not look "legit" and that he believed plaintiff typed up the purported court documents himself. (Compl. ¶ 17). Plaintiff further alleges that on an unspecified date, C.O. Sposato removed plaintiff from the library call-out. Plaintiff alleges that thereafter, he was placed on bi-weekly evening law library call-outs but C.O. Sposato again removed him from the call-out. Plaintiff claims as a result of C.O. Sposato's actions, he missed unspecified "mandated court deadlines and statutory court deadlines." (Compl. ¶ 38).[4]

---

[3]     "Call-outs" allow prisoners to leave their housing block to do things such as attend programs and religious services or visit the law library. See Bilal v. New York State Dep't of Corr., 2010 WL 2506988, at *1 (S.D.N.Y. June 21, 2010).

[4]     Although plaintiff does not allege on which date(s) C.O. Sposato took these actions, according to a DOCCS memorandum plaintiff appended to his opposition to the motion to

According to plaintiff, on an unspecified date, C.O. Peterson told him she could not "give extended access to the law library" because the deadline to file a federal habeas corpus petition had passed.  (Compl. ¶¶ 25–26).

Finally, plaintiff alleges that on unspecified dates, he was removed from Friday morning and evening law library call-outs.

## DISCUSSION

I.     Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[5]  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

---

dismiss, on October 19, 2016, he was placed on bi-weekly evening call-outs.  (Doc. #30-8 at ECF 6).  Thus, C.O. Sposato's alleged actions may have occurred in fall 2016.

[5]      Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.   Exhaustion

Defendants argue the operative complaint should be dismissed because plaintiff fails to allege whether prior to filing this lawsuit, he fully exhausted his administrative remedies with respect to his claim against C.O. Wells.

The Court disagrees.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." Williams v. Corr. Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016). "Accordingly, inmates are not required to specially plead or demonstrate exhaustion in their complaints." Id. Thus, when "a prisoner indicates that he has taken some steps toward exhaustion, district courts will normally not infer from his silence that he failed to take the remaining steps that full exhaustion would require." Huggins v. Schriro, 2015 WL 7345750, at *3 (S.D.N.Y. Nov. 19, 2015), report and recommendation adopted, 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016). "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." Williams v. Corr. Officer Priatno, 829 F.3d at 122.

Construing all inferences in plaintiff's favor, it is not clear from the face of the operative complaint that plaintiff failed to exhaust administrative remedies. To the contrary, plaintiff makes numerous statements in the complaint regarding his use of Green Haven's grievance system.

Accordingly, at this early stage of the proceedings, the Court will not dismiss plaintiff's claim against C.O. Wells for failure to fully exhaust administrative remedies. Nor will the Court dismiss the entire operative complaint on the basis that plaintiff may not have fully exhausted administrative remedies against one out of several defendants.

III.   Statute of Limitations and Equitable Tolling

    A.   Statute of Limitations

Defendants argue plaintiff's claims based on incidents prior to December 16, 2016, are barred by the statute of limitations.

The Court agrees.

"The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). A Section 1983 claim accrues when the plaintiff knows or has reason to know of the harm. Id. Dismissal based on a statute of limitations defense is "appropriate only if a complaint clearly shows the claim is out of time." Brewer v. Hashim, 738 F. App'x 34, 34–35 (2d Cir. 2018) (summary order).

Here, plaintiff's original complaint was signed December 16, 2019. Accordingly, claims that accrued before December 16, 2016, are time-barred unless plaintiff establishes he is entitled to equitable tolling.

Plaintiff alleges several violations occurred before December 16, 2016: (i) prior to and in May 2016, he was denied writing paper, an envelope, and a pen, (ii) on August 29, 2016, C.O. McNeil denied plaintiff extended law library access, and (iii) on September 29, 2016, C.O. McNeil removed plaintiff from the library call-out. Each of these claims became time-barred three years after the date of the alleged violation—in other words, before plaintiff filed his original complaint.

Accordingly, plaintiff's claims against C.O. McNeil, as well as plaintiff's claim he was not given writing materials, are untimely unless equitable tolling applies.

B.    Equitable Tolling

Plaintiff argues his claims are not barred by the statute of limitations because he filed certain grievances.

The Court disagrees.

The statute of limitations may be equitably tolled if a plaintiff "show[s] that extraordinary circumstances prevented him from filing his [complaint] on time" and that he "acted with

7

reasonable diligence throughout the period he seeks to toll." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). To show that extraordinary circumstances "prevented" a plaintiff from filing his complaint on time, he "must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [plaintiff], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001). In addition, "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." Gonzalez v. Hasty, 651 F.3d 318, 323–24 (2d Cir. 2011). "The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling claim . . . have ceased to be operational." See Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007).

Plaintiff identifies no extraordinary circumstance that prevented him from filing his claims sooner. And although plaintiff alleges he filed several grievances that were denied and appealed between August 2016 and July 2017, he does not specify which, if any, was filed in connection with the denial of writing materials or C.O. McNeil's actions. Moreover, plaintiff fails to allege when he received decisions on his grievance appeals, which would demarcate the end of the exhaustion process for each grievance. To the extent plaintiff argues grievances he filed on April 17, 2015, and July 21, 2015, for which he received final decisions on November 25, 2015, and November 18, 2015, respectively, toll the statute of limitations, these grievances pre-date the 2016 claims at issue, and thus do not equitably toll the statute of limitations.

Accordingly, the claims against C.O. McNeil, as well as plaintiff's claim he was not given writing materials, must be dismissed.[6]

---

[6]     Furthermore, with respect to plaintiff's claim that he was denied writing paper, an envelope, and a pen, plaintiff fails to allege which defendant withheld these items. See Wright v.

IV.    Denial of Access to the Courts

Defendants argue plaintiff fails to state a claim for denial of access to the courts.[7]

The Court agrees.

A.    Legal Standard

To state a constitutional claim for denial of access to the courts, plaintiff must plausibly allege that a defendant, acting deliberately and with malice, "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim," causing plaintiff to suffer "actual injury." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). To establish actual injury, the denial must have hindered the plaintiff's efforts in pursuing a nonfrivolous legal claim. See Amaker v. Haponik, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999).

"Interferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts do not violate this constitutional right." See Jermosen v. Coughlin, 1995 WL 144155, at *5 (S.D.N.Y. Mar. 30, 1995). "[T]he Constitution does not require unlimited and unrestricted access to a law library at the demand of a prisoner. Prison officials may impose reasonable restrictions on the use of a prison law library." Oliver v. Head Sherriff of Dep't & Div. of Corr. of Nassau Cnty., 2008 WL 238577, at *2 (E.D.N.Y. Jan. 28, 2008).

---

Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

[7]    The source of the constitutional right of access to the courts "has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." Crosby v. Petermann, 2020 WL 1434932, at *11 (S.D.N.Y. Mar. 24, 2020).

B.    <u>Application</u>

Plaintiff alleges that at various times, C.O. Wesley, C.O. Wells, C.O. Sposato, and C.O. Peterson each denied him access to the law library.  However, plaintiff fails to allege he suffered any actual injury as a result of these denials.  Plaintiff does allege C.O. Sposato caused him to miss "mandated court deadlines and statutory court deadlines" (Compl. ¶ 38), and C.O. Wells caused him to "miss court deadlines" (Am. Compl. at ECF 6).  However, these vague and conclusory allegations do not suffice to plead he suffered an actual injury as a result of defendants' actions.  See, e.g., Amaker v. Lee, 2019 WL 1978612, at *13 (S.D.N.Y. May 3, 2019), reconsideration denied sub nom. Amaker v. Lieberman, 2019 WL 3554507 (S.D.N.Y. Aug. 5, 2019) (conclusory allegations that plaintiff missed deadlines in "two appeals in the Appellate Division" as a result of denial to law library insufficient to plead an access to the courts claim).  For instance, plaintiff does not allege which specific, nonfrivolous legal challenges were affected by the named defendants' actions; which particular deadlines, if any, he missed due to such actions; or what specific documents, such as motions or pleadings, he was prevented from filing.

Plaintiff similarly fails to allege he suffered any actual injury with respect to his claims that he was removed from Friday library call-outs.  Plaintiff does not allege, for instance, how many total days he was denied access to the law library as a result of being taken off the call-out, or what claims or proceedings he was stopped from pursuing at the time.  Moreover, plaintiff does not allege who took him off of the Friday call-outs.  See Wright v. Smith, 21 F.3d at 501 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

In addition, the Court does not find persuasive plaintiff's argument that several Court of Claims decisions and one U.S. District Court, Southern District of New York decision, each appended to his opposition and issued between February 2020 and July 2020, provide "indisputable proof [] that plaintiff missed his court deadlines." (Pl. Mem. at ECF 4). Again, plaintiff has not alleged details plausibly to plead an actual injury.

Accordingly, plaintiff fails plausibly to allege an actual injury, and his denial of access to the courts claims must be dismissed.

Furthermore, to the extent plaintiff alleges a denial of access to the courts claim against DOCCS, such claim is barred under the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009). Therefore, plaintiff's claim that certain DOCCS rules are unconstitutional—including those allowing C.O.s to remove inmates from library call-outs, placing a two-day-a-week limit on library call-outs, and disallowing make-up call-outs for excused absences—must be dismissed.

V.     Deliberate Indifference to Serious Medical Needs

Defendants argue plaintiff fails to state a claim for deliberate indifference to his serious medical needs.

The Court agrees.

To state a claim for constitutionally inadequate medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has an objective prong and a mens rea prong: a plaintiff must plausibly allege (i) a "sufficiently serious" inadequacy of medical care,

11

and (ii) that the officials in question acted with a "sufficiently culpable state of mind."

Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts. First, a plaintiff must adequately plead he "was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d at 279. Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth Amendment only if they fail "'to take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)). Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious." Id. at 280. Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. "Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." Id.

Here, plaintiff fails to plead a sufficiently serious inadequacy of medical care. Plaintiff alleges C.O. Wesley was aware of plaintiff's unspecified "pre-existing medical conditions of injuries" for which plaintiff was taking pain medication, and that C.O. Wesley "refused" to give plaintiff his medication, causing plaintiff to have a panic attack. (Pl. Mem. at ECF 5). However, plaintiff fails to identify the pre-existing medical conditions for which he was denied medication. Even drawing all reasonable inferences in plaintiff's favor, the Court concludes plaintiff has failed plausibly to allege facts from which a sufficiently serious constitutional violation could be inferred.

12

Accordingly, plaintiff's deliberate indifference to serious medical needs claim against

C.O. Wesley must be dismissed.

VI.    First Amendment Retaliation Claim

To the extent plaintiff alleges C.O. Sposato retaliated against him, such claim must be

dismissed.

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly

allege:  (i) he engaged in constitutionally protected speech or conduct, (ii) a defendant took

adverse action against him, and (iii) the protected speech and adverse action are causally

connected.  Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015).  Courts approach prisoners'

retaliation claims "with skepticism and particular care, because virtually any adverse action

taken against a prisoner by a prison official—even those otherwise not rising to the level of a

constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."

Id. at 295.  Accordingly, a prisoner pursuing a retaliation claim must not rest on "wholly

conclusory" allegations, but rather must allege "specific and detailed" supporting facts.  Id.

With respect to the first element, "[f]iling a lawsuit or an administrative complaint and

filing prison grievances all constitute protected activities."  Gilliam v. Black, 2019 WL 3716545,

at *15 (D. Conn. Aug. 7, 2019) (citing Dolan v. Connolly, 794 F.3d at 294).

Regarding the second element, "[o]nly retaliatory conduct that would deter a similarly

situated individual of ordinary firmness from exercising his or her constitutional rights

constitutes an adverse action for a claim of retaliation."  Davis v. Goord, 320 F.3d at 353.

Finally, to allege a causal connection, the plaintiff's "allegations must support an

inference that the protected conduct was a substantial and motivating factor for the adverse

action[]."  Dorsey v. Fisher, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order).  "A plaintiff

can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009).

Here, plaintiff fails plausibly to allege his filing of an April 17, 2015, grievance was a substantial and motivating factor for C.O. Sposato's alleged retaliation. Plaintiff alleges that on an unspecified date, C.O. Sposato removed plaintiff from the law library, ordered plaintiff to show him the envelope containing plaintiff's court documents, and upon reviewing them, stated the documents did not look "legit" and that he believed plaintiff typed up the court documents himself. (Compl. ¶ 17). Plaintiff further alleges that on an unspecified date, C.O. Sposato removed plaintiff from the library call-out. However, the pleadings contain no facts suggesting C.O. Sposato's actions were motivated by the April 17, 2015, grievance. Further, no causal connection based on closeness in time between the April 17, 2015, grievance and the alleged retaliation can be inferred when plaintiff does not provide the dates for C.O. Sposato's actions.

Accordingly, plaintiff's retaliation claim must be dismissed.

VII.    Harassment

Plaintiff's allegations that on an unspecified date, C.O. Wesley "targeted" plaintiff and began giving plaintiff "a very hard time" are insufficient to allege a Fourteenth Amendment violation. (Compl. ¶ 46). "[V]erbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983." See Harris v. Lord, 957 F. Supp. 471, 475 (S.D.N.Y. 1997).

VIII.   Injunctive Relief

Plaintiff's request for injunctive relief against all defendants is mooted because plaintiff is no longer an inmate at Green Haven. See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.").

14

IX.    State Law Claims

Having dismissed all claims over which it has original jurisdiction, the Court declines to

exercise supplemental jurisdiction over any state law claims the operative complaint can be

liberally read to assert.  See 28 U.S.C. § 1367(c)(3).

X.    Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely

give leave" to amend a complaint "when justice so requires."  Liberal application of Rule 15(a)

is warranted with respect to pro se litigants, who "should be afforded every reasonable

opportunity to demonstrate that [they have] a valid claim."  Matima v. Celli, 228 F.3d 68, 81 (2d

Cir. 2000).  District courts "should not dismiss [a pro se complaint] without granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

Here, because a liberal reading of the complaint indicates there may be valid claims for

denial of access to the courts against C.O. McNeil, C.O. Sposato, C.O. Peterson, C.O. Wesley,

and C.O. Wells; a valid claim for retaliation against C.O. Sposato; and a valid claim for

deliberate indifference to serious medical needs against C.O. Wesley, the Court grants plaintiff

leave to file a second amended complaint in accordance with the instructions below **to the extent

he can do so clearly, concisely, truthfully, and plausibly**.

To the greatest extent possible, plaintiff's second amended complaint must address the

deficiencies identified in this Opinion and Order, and must:

1.    State if plaintiff is seeking equitable tolling on his time-barred claims, and if so,

what extraordinary circumstances prevented him from filing his complaint on time and what

specific actions he took to act with reasonable diligence throughout the period he seeks to toll;

     2.       Provide the beginning and end dates of any grievance process pursued related to claims that may be untimely;

     3.       Describe all relevant events, stating the facts that support plaintiff's claims that plaintiff was denied access to the law library by C.O. McNeil, C.O. Sposato, C.O. Peterson, C.O. Wesley, or C.O. Wells and include a clear explanation of the actual injury caused by each alleged denial of access to the law library, including (i) which deadline he missed, (ii) in which case, and (iii) based on which defendant's actions on which date;

     4.       Describe all relevant events, stating the facts that support plaintiff's retaliation claim, including what actions C.O. Sposato took against plaintiff;

     5.       Describe all relevant events, stating the facts that support plaintiff's deliberate indifference to medical needs claim, including what C.O. Wesley did or failed to do with respect to such claim; and

     6.       **Provide the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event**.

Essentially, the body of plaintiff's second amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why plaintiff is entitled to relief.

**Finally, the second amended complaint will** completely **replace the complaint, the amended complaint, and plaintiff's opposition to the motion to dismiss, including attachments. Therefore, plaintiff should include in the second amended complaint all information necessary for his claims. However, plaintiff is directed to include in his second**

amended complaint <u>only</u> those facts and documents he believes plausibly support a violation of his constitutional rights.

**CONCLUSION**

The motion to dismiss is GRANTED.  However, plaintiff is granted leave to file a second amended complaint as to his claim for denial of access to the courts against defendants C.O. McNeil, C.O. Sposato, C.O. Peterson, C.O. Wesley, and C.O. Wells; his deliberate indifference to serious medical needs claim against defendant C.O. Wesley; and his retaliation claim against C.O. Sposato in accordance with the instructions above.

Plaintiff shall file his second amended complaint by no later than February 8, 2021, using the second amended complaint form attached to this Opinion and Order.  **If plaintiff fails to file a second amended complaint or seek additional time to do so by February 8, 2021, the Court will deem plaintiff to have abandoned this case and will direct the Clerk to enter judgment in defendants' favor, and close the case.**

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion.  (Doc. #26).

Dated: December 23, 2020
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

_____
_____
_____
_____
_____
_____

*(In the space above enter the full name(s) of the defendant(s).  If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names listed in the above caption must be identical to those contained in Part I.  Addresses should not be included here.)*

**SECOND
AMENDED
COMPLAINT**

under the Civil Rights Act,
42 U.S.C. § 1983

Jury Trial:  ☐ Yes      ☐ No

(check one)

19 Civ. 11821 (VB)

I.      **Parties in this complaint:**

A.      List your name, identification number, and the name and address of your current place of confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff's      Name_____

                     ID#_____

                     Current Institution_____

                     Address_____

                     _____

B.      List all defendants' names, positions, places of employment, and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant  No. 1      Name _____ Shield #_____

                              Where Currently Employed _____

                              Address _____

                              _____

*Rev. 01/2010*                                      1

Defendant  No. 2        Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

Defendant  No. 3        Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

Who did
what?

Defendant  No. 4        Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

Defendant  No. 5        Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

## II.    Statement of Claim:

State as briefly as possible the facts of your case.   Describe how each of the defendants named in the
caption of this complaint is involved in this action, along with the dates and locations of all relevant events.
You may wish to include further details such as the names of other persons involved in the events giving
rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims,
number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.    In what institution did the events giving rise to your claim(s) occur?

_____

_____

B.    Where in the institution did the events giving rise to your claim(s) occur?

_____

C.    What  date  and  approximate  time  did  the  events  giving  rise  to  your  claim(s)  occur?

_____

_____

_____

D.    Facts: _____

What
happened
to you?

_____

_____

_____

*Rev. 01/2010*                                  2

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| Was anyone else involved? |

_____
_____
_____
_____

| Who else saw what happened? |

## III.   Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

_____
_____
_____
_____
_____
_____
_____
_____

## IV.   Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Administrative remedies are also known as grievance procedures.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes ____   No ____

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_____

_____

_____

B.   Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

Yes _____   No _____   Do Not Know _____

C.   Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

Yes _____   No _____   Do Not Know _____

If YES, which claim(s)?

_____

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

Yes _____   No _____

If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

Yes _____   No _____

E.   If you did file a grievance, about the events described in this complaint, where did you file the grievance?

_____

1.   Which claim(s) in this complaint did you grieve?

_____

_____

2.   What was the result, if any?

_____

_____

3.   What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process.

_____

_____

_____

_____

F.   If you did not file a grievance:

1.   If there are any reasons why you did not file a grievance, state them here:

_____

_____

_____

_____
_____
_____

2.   If you did not file a grievance but informed any officials of your claim, state who you
     informed, when and how, and their response, if any:

_____
_____
_____
_____
_____
_____

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative
     remedies.

_____
_____
_____
_____
_____
_____
_____
_____

Note:   You may attach as exhibits to this complaint any documents related to the exhaustion of your
        administrative remedies.

**V.   Relief:**

State what you want the Court to do for you (including the amount of monetary compensation, if any, that
you are seeking and the basis for such amount).   _____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____

_____

_____

**VI.    Previous lawsuits:**

On
these
claims

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____  No _____

B.    If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below.  (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____
Defendants _____

2. Court (if federal court, name the district; if state court, name the county) _____
_____

_____ 3.    Docket or Index number _____

_____ 4.    Name of Judge assigned to your case_____

5.    Approximate date of filing lawsuit _____

6.    Is the case still pending?  Yes _____  No _____
If NO, give the approximate date of disposition_____

7.    What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____
_____

On
other
claims

C.    Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

Yes _____  No _____

D.    If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____
Defendants _____

2.    Court (if federal court, name the district; if state court, name the county) _____
_____

_____ 3.    Docket or Index number _____

_____ 4.    Name of Judge assigned to your case_____

5.    Approximate date of filing lawsuit _____

6.      Is the case still pending?  Yes _____  No _____

      If NO, give the approximate date of disposition_____

7.      What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____

      _____

      _____


**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _____ day of _____, 20___.

               Signature of Plaintiff    _____

               Inmate Number       _____

               Institution Address    _____

                                         _____

                                         _____

                                         _____


<u>Note</u>:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

               Signature of Plaintiff:   _____