UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DARRELL GUNN, :
              Plaintiff, :
:
v. :
:
CORRECTION OFFICER PATRICK LEON :
MCNEIL, CORRECTION OFFICER :
PETERSON, CORRECTION OFFICER KEITH :
SPOSATO, CORRECTION OFFICER :
WESLEY, and CORRECTION OFFICER :
ANTHONY WELLS, :
              Defendants. :
--------------------------------------------------------------x

**OPINION AND ORDER**

19 CV 11821 (VB)

Briccetti, J.:

    Plaintiff Darrell Gunn, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983 against defendants Correction Officers ("C.O.") Patrick Leon McNeil, Peterson, Keith Sposato, Wesley, and Anthony Wells. Plaintiff alleges violations of his First, Fifth, Eighth, and Fourteenth Amendments.

    Now pending is defendants' motion to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6). (Doc. #39).

    For the reasons set forth below, the motion is GRANTED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

    For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

1

I.       Alleged Misconduct

During the complained-of events, plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven") in Stormville, New York.

Plaintiff claims that on April 21, 2015, C.O. Sposato denied plaintiff "special access" to the law library, causing plaintiff to miss a court deadline for an Article 78 proceeding in Albany County Court. (Doc. #36 ("SAC") at ECF 3–4).[1]

Plaintiff also alleges that on August 29, 2016,[2] as he was working on an appeal of a decision by the New York State Court of Claims on "claim number 125510, Motion numbers M-88138 CM-88522," C.O. McNeil told plaintiff he could not give him extended law library access because the Court of Claims "is not considered a court deadline." (SAC at ECF 3). Plaintiff alleges that as a result, he was unable to file a timely appeal.

According to plaintiff, on September 29, 2016, C.O. McNeil removed plaintiff from a law library call-out,[3] causing plaintiff to miss the court deadline to file a timely claim in Court of Claims, motion number M-94382.

---

[1]       "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system."

[2]       Plaintiff does not provide a date for this alleged denial in his SAC. However, his original complaint makes clear that this alleged incident occurred on August 29, 2016. (See Doc. #2 ("Compl.") ¶¶ 23–24, 42). Although the Court warned plaintiff the SAC would completely replace his prior pleadings and opposition to the first motion to dismiss (see Doc. #34 at ECF 16–17), the Court incorporates into the SAC the date of this incident because plaintiff is proceeding pro se, and the Court must liberally construe his submissions.

[3]       "Call-outs" allow prisoners to leave their housing block to do things such as attend programs and religious services or visit the law library. See Bilal v. New York State Dep't of Corr., 2010 WL 2506988, at *1, n.3 (S.D.N.Y. June 21, 2010). Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Plaintiff also alleges that on March 24, 2017, C.O. Wesley denied plaintiff evening law library access, causing him to miss an unspecified court deadline in Southern District of New York ("S.D.N.Y.") case Gunn v. Annucci, 19-cv-10039 (CS). Plaintiff further claims he suffered a panic attack, which was not reported to the medical unit, and that C.O. Wesley withheld plaintiff's pain medication for "headaches, neck, back, and shoulder," even though C.O Wesley knew he needed pain medication. (SAC at ECF 8).

Plaintiff next alleges that on June 1, 2017, C.O. Wells denied plaintiff access to the law library, causing plaintiff to miss an unspecified court deadline in S.D.N.Y. case Gunn v. Doe, 19-cv-10383 (LLS).

Further, on an unspecified date, C.O. Sposato allegedly retaliated against plaintiff by denying plaintiff a law library call-out. Plaintiff alleges C.O. Sposato removed plaintiff from the law library, accusing plaintiff of "doing something wrong." (SAC at ECF 4). C.O. Sposato allegedly also said, "Show me the envelopes these court papers came in; I believe you typed these papers up yourself. They don't look legit." (Id.). Plaintiff claims as a result of C.O. Sposato's actions, he missed a Court of Claims deadline for motion numbers M-94833 and M-95113.

Finally, plaintiff alleges that on an unspecified date, C.O. Peterson told him she could not "give extended access to the law library" because the deadline to file a federal habeas corpus petition had passed. (SAC at ECF 5–7). Plaintiff claims he could still timely file a federal habeas corpus petition in S.D.N.Y. case Gunn v. M. Capra, 19-cv-1572.

II.   Original Complaint and Motion to Dismiss

Plaintiff's original complaint, which he signed on December 16, 2019, was filed on December 20, 2019. (Doc. #2). Plaintiff filed an amended complaint on March 30, 2020. (Doc.

3

#19). Given plaintiff's pro se status, the Court liberally construed both documents together as the operative complaint. (Doc. #20 at ECF 2). On December 23, 2020, the Court granted defendants' motion to dismiss the operative complaint. See Gunn v. McNeil, 2020 WL 7647422, at *1 (S.D.N.Y. Dec. 23, 2020); (Doc. #34). However, because a liberal reading of the operative complaint indicated there might be valid claims for denial of access to the courts, deliberate indifference to serious medical needs, and retaliation, the Court granted plaintiff leave to file the instant second amended complaint. (Id.).

## DISCUSSION

I.   Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[4] First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

---

[4]   Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

4

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.  Statute of Limitations and Equitable Tolling

A.  Statute of Limitations

Defendants argue plaintiff's claims based on incidents prior to December 16, 2016, are barred by the statute of limitations.

The Court agrees.

"The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). A Section 1983 claim accrues when the plaintiff knows or has reason to know of the harm. Id. Dismissal based on a statute of limitations defense is "appropriate only if a complaint clearly shows the claim is out of time." Brewer v. Hashim, 738 F. App'x 34, 34–35 (2d Cir. 2018) (summary order).

Here, plaintiff's original complaint was signed December 16, 2019. Accordingly, claims that accrued before December 16, 2016, are time-barred unless plaintiff establishes he is entitled to equitable tolling.

Plaintiff alleges three violations occurred before December 16, 2016: (i) on April 21, 2015, C.O. Sposato denied plaintiff access to the law library, (ii) on August 29, 2016, C.O. McNeil denied plaintiff extended law library access; and (iii) on September 29, 2016, C.O. McNeil removed plaintiff from a library call-out. Thus, each of these claims became time-barred before plaintiff filed his original complaint—unless equitable tolling applies.

B.      Equitable Tolling

Plaintiff argues he should be allowed equitable tolling because he was on a hunger strike for an unspecified duration of time and "was on a one-on-one watch which denied plaintiff to pen, paper, envelope, mail and law library." (Doc. #43 ("Pl. Opp.") at ECF 2).[5]

The Court is not persuaded.

The statute of limitations may be equitably tolled if a plaintiff "show[s] that extraordinary circumstances prevented him from filing his [complaint] on time" and that he "acted with reasonable diligence throughout the period he seeks to toll." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). To show extraordinary circumstances "prevented" a plaintiff from filing his complaint on time, he "must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [plaintiff], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Hizbullahankhamon v. Walker,

---

5    Because plaintiff is proceeding pro se, the Court considers allegations made for the first time in his opposition to the motion to dismiss. See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).

6

255 F.3d 65, 75 (2d Cir. 2001). "The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling . . . claim have ceased to be operational." See Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007).

Here, plaintiff has not identified any extraordinary circumstances justifying the application of equitable tolling to his claims arising before December 16, 2016. First, even if a hunger strike were an extraordinary circumstance, see Gunn v. Aquafredda, 2021 WL 3115488, at *6 (S.D.N.Y. July 21, 2021) ("[A] voluntary action like a hunger strike . . . [would not] excuse Plaintiff from complying with the statute of limitations."), plaintiff fails to specify when or for how long he was on a hunger strike, as well as what impact the hunger strike had on his ability to file a timely complaint once the hunger strike ended. Second, plaintiff explains neither what a "one-on-one watch" is nor how long it lasted; even if he was denied "pen, paper, envelope, mail" for some period of time, his vague allegation does not establish he suffered any extraordinary circumstances. Furthermore, "restricted access to library facilities does not merit equitable tolling." Cross v. McGinnis, 2006 WL 1788955, at *6 (S.D.N.Y. June 28, 2006).

Finally, plaintiff has not demonstrated he "acted with reasonable diligence throughout the period he seeks to toll." Smith v. McGinnis, 208 F.3d at 17.

Accordingly, plaintiff's claims stemming from incidents on April 21, 2015, August 29, 2016, and September 29, 2016, against C.O.s Sposato and McNeil, must be dismissed.

III.    Denial of Access to the Courts Claim

Defendants argue plaintiff fails to state a claim for denial of access to the courts.[6]

The Court agrees.

---

[6] The source of the constitutional right of access to the courts "has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." Crosby v. Petermann, 2020 WL 1434932, at *11 (S.D.N.Y. Mar. 24, 2020).

7

A.     Legal Standard

To state a constitutional claim for denial of access to the courts, plaintiff must plausibly allege a defendant, acting deliberately and with malice, "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim," causing plaintiff to suffer "actual injury." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  To establish actual injury, the denial must have hindered the plaintiff's efforts in pursuing a nonfrivolous legal claim.  See Amaker v. Haponik, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999).

"Interferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts do not violate this constitutional right." See Jermosen v. Coughlin, 1995 WL 144155, at *5 (S.D.N.Y. Mar. 30, 1995).  "[T]he Constitution does not require unlimited and unrestricted access to a law library at the demand of a prisoner.  Prison officials may impose reasonable restrictions on the use of a prison law library." Oliver v. Head Sherriff of Dep't & Div. of Corr. of Nassau Cnty., 2008 WL 238577, at *2 (E.D.N.Y. Jan. 28, 2008).

B.     Application

Plaintiff alleges the following incidents infringed on his constitutional right to access the courts:  (i) on March 24, 2017, C.O. Wesley denied plaintiff law library access causing him to miss an unspecified deadline in Gunn v. Annucci, 19-cv-10039 (CS); (ii) on June 1, 2017, C.O. Wells denied plaintiff law library access causing him to miss an unspecified deadline in Gunn v. Doe, 19-cv-10383 (LLS); (iii) on an unspecified date, C.O. Sposato denied plaintiff a law library call-out, removing him from the law library and causing him to miss a Court of Claims deadline for motion numbers M-94833 and M-95113; and (iv) on an unspecified date, C.O. Peterson

8

denied plaintiff extended access to the law library, causing him to miss a deadline to file a federal habeas corpus petition in S.D.N.Y. case Gunn v. M. Capra, 19-cv-1572.

For each incident, plaintiff fails plausibly to allege a denial of access-to-courts claim.

First, with respect to the March 24 and June 1, 2017, denial of access-to-law-library claims, plaintiff argues he suffered injury because he missed court deadlines respectively in Gunn v. Annucci, 19-cv-10039 (CS), commenced on October 25, 2019, and Gunn v. Doe, 19-cv-10383 (LLS), commenced on November 6, 2019.  However, because both of those cases were filed in 2019, there were no court deadlines for plaintiff to meet in either of those cases in 2017, when plaintiff was allegedly denied access to the law library.  To the extent plaintiff's allegations can be construed to mean he would have filed those two lawsuits sooner had he not been denied access to the law library on March 24 and June 1, 2017, plaintiff has not alleged why he failed to file the lawsuits after the alleged law library denials.  Thus, neither incident can sustain a denial of access-to-courts claims.

Second, with respect to the third and fourth incidents, plaintiff did not provide a specific date for the alleged occurrences.  And although plaintiff does provide case numbers of the cases in which he allegedly missed deadlines as a result of these two denials, without further specification of which deadlines he missed or which documents he was prevented from filing, the Court is unable to determine whether either defendant hindered the plaintiff's efforts in pursuing a nonfrivolous legal claim.[7]  See Amaker v. Haponik, 1999 WL 76798, at *3.  Ultimately, as with plaintiff's prior pleadings, plaintiff's allegations in the SAC regarding these

---

[7]     In addition, although plaintiff claims he could still timely file a federal habeas corpus petition in S.D.N.Y. case Gunn v. M. Capra, 19-cv-1572, a review of that docket indicates the case is actually Thorne v. O'Hara Marine, Inc. and not one in which plaintiff is a party.

two incidents remain too vague and conclusory to sufficiently plead he suffered an actual injury as a result of defendants' actions.

Finally, plaintiff does not plausibly allege with respect to any of these incidents that the respective defendant acted deliberately and maliciously, which would be required to establish a constitutional violation. See Davis v. Goord, 320 F.3d at 351.

Accordingly, plaintiff's claim for denial of access to the courts must be dismissed.

IV.     Deliberate Indifference to Serious Medical Needs Claim

Defendants argue plaintiff fails to state a claim for deliberate indifference to his serious medical needs.

The Court agrees.

To state a claim for constitutionally inadequate medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has an objective prong and a mens rea prong: a plaintiff must plausibly allege (i) a "sufficiently serious" inadequacy of medical care, and (ii) that the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts. First, a plaintiff must adequately plead he "was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d at 279. Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth Amendment only if they fail "'to take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)). Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious." Id. at 280. Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the

10

inadequacy has caused or will likely cause the prisoner." Id.  If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id.  "Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." Id.

Here, plaintiff fails to plead a sufficiently serious inadequacy of medical care.  Liberally read, the SAC alleges C.O. Wesley denied plaintiff pain medication for "headaches, neck, back, and shoulder," even though C.O. Wesley was aware plaintiff required pain medication.  (SAC at ECF 8).  Such ailments, "without more, fail to satisfy the objective requirement that Plaintiff suffered from a condition of urgency that may produce death, degeneration, or extreme pain that threatened his health or safety." Adams v. Annucci, 2020 WL 1489787, at *12 (S.D.N.Y. Mar. 27, 2020), reconsideration denied, 2021 WL 308223 (S.D.N.Y. Jan. 21, 2021).

To the extent plaintiff complains that the medical unit was never notified of his panic attack, such claim also fails because plaintiff alleges neither that the panic attack was sufficiently serious, nor who failed to inform the medical unit of the panic attack.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

Accordingly, plaintiff's claim for deliberate indifference to serious medical needs must be dismissed.

V.  First Amendment Retaliation Claim

Defendants argue plaintiff fails to plead a First Amendment retaliation claim.

The Court agrees.

11

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege: (i) he engaged in constitutionally protected speech or conduct, (ii) a defendant took adverse action against him, and (iii) the protected speech and adverse action are causally connected. Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015). Courts approach prisoners' retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Id. at 295. Accordingly, a prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. Id.

Here, beyond stating C.O. Sposato retaliated against him by denying him a law library call-out, plaintiff offers no allegations, detailed or otherwise, to suggest he engaged in constitutionally protected speech or conduct, or that some protected speech or conduct and the denial of the law library call-out are causally connected. Accordingly, plaintiff's retaliation claim must be dismissed.

VI.   Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). But "a futile request to replead should be denied." Id.

Here, plaintiff has amended his complaint twice, including once after the Court granted him leave to amend. Moreover, even a liberal construction of the SAC's allegations do not suggest plaintiff has a valid claim he has merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, the problems with the SAC are substantive, and supplementary and/or improved pleading will not cure its deficiencies. Id. Allowing plaintiff another opportunity to amend his complaint would be futile. Accordingly, leave to amend is denied.

## CONCLUSION

The motion to dismiss is GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion (Doc. #39), and close this case.

Dated: December 20, 2021
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge